## A. J. SANDERS v. MRS. KITTIE DANIEL, et al.

Middle Section. May 21, 1928.

No petition for Certiorari was filed.

Howard E. Brown, of Dickson, for appellant.
Morris & Simpson, of Waverly, for appellee.

FAW, P. J. The parties to this suit are all residents of Humphreys county, Tennessee. A. J. Sanders filed the original bill in the chancery court of Humphreys county against Mrs. Kittie Daniel and her son Long Daniel, a minor. Long Daniel alone appealed from the decree of the Chancellor, and the case is before us on his appeal and assignments of error.

The complainant Sanders is, and has been for more than thirty years, a dealer in mules at Waverly. At the time of the transactions involved in this litigation the defendants were living on a farm in Humphreys county, seven or eight miles from Waverly, belonging to the father of the defendant Mrs. Daniel. The husband of Mrs. Daniel, and father of defendant Long Daniel, became mentally deranged and was committed to the State Hospital for the Insane in the year of 1923 and, so far as appears, he has since remained in that institution. At the time of his father's incarceration in the hospital for the insane in 1923, the defendant Long Daniel, then seventeen years of age and the oldest son of his parents, undertook to superintend and manage the operation of the farm on which they were living and the business incident thereto. From a business standpoint, he was not successful in this venture, and at the time the bill in this case was filed (February 21, 1927), he and his mother were in debt considerably beyond their ability to meet their financial obligations.

On March 14, 1925, complainant Sanders sold to defendant Long Daniel "two bay mare-mules, four years old and sixteen hands high" at the price of $500. By the terms of sale agreed upon at the time, defendant Long Daniel was to pay for the two mules on January 1, 1926, the title to the mules to remain in complainant as security until the purchase price, with interest, was paid. Complainant desired additional security and defendant Long Daniel expressed a willingness to pledge, as additional security, two other mules then owned by him and to which he had an unincumbered title. In order to avoid the expense of the preparation, execution and registration of a chattel mortgage, the parties, by agreement, resorted to a device which will now be stated. It was agreed that defendant Long Daniel would sell to complainant the two mules last mentioned (a bay horse-mule and a blue mare-mule) at and for the price of $325, and complainant would immediately re-sell the bay horse-mule and blue mare-mule to Long Daniel for the same price and take Long Daniel's note for $500, due January 1, 1926, and bearing interest from its date, retaining title therein to the four mules until the note, with interest, was paid. Complainant thereupon drew his check, payable to Long Daniel, on a bank in Waverly for $325 and handed it to Long Daniel, and the latter immediately indorsed the check and handed it back to complainant. The check was retained by complainant and did not pass through the bank. In accordance with the agreement as stated, defendant Long Daniel executed and delivered to complainant his note for $500, due January 1, 1926, bearing interest from its date, and purporting, by recitals therein, to retain title in complainant to the four mules hereinbefore mentioned. All of the aforementioned negotiations were conducted and the trade was consummated, in the manner stated, in Waverly on March 14, 1925. The two bay mare-

mules were present and were delivered by complainant to Long Daniel at that time, but the bay horse-mule and the blue mare-mule were at Long Daniel's home in the country, or near there, in the possession of his employees or agents, and there was no transfer of possession thereof. Manifestly, the entire transaction, so far as it involved the bay horse-mule and blue mare-mule, was merely colorable, and was conceived and executed for the purpose of circumventing the registration laws in order to save expense.

The aforesaid note of Long Daniel for $500 matured on January 1, 1926, and remained in the hands of complainant, overdue and unpaid, until May 10, 1926, on which latter date the two defendants, Long Daniel and Mrs. Kittie Daniel, executed and delivered to complainant a note for $625.70, due December 25th (1926), and, contemporaneously with the execution of the latter note, Long Daniel executed and delivered to complainant a chattel mortgage on six mules to secure said note. The six mules described in the chattel mortgage included the four mules involved in the former transaction and, in addition, two black horse-mules. The aforesaid chattel mortgage was duly registered in the Register's office of Humphreys county on the day of its execution, and the note of March 15, 1925, for $500 was canceled by complainant and surrendered to Long Daniel.

The note for $625.70 was made up of the said note of March 14, 1925, for $500, with interest thereon from its date at eight per cent. per annum, and a balance of $40 on another note owing by Long Daniel to complainant, which, so far as appears, was not related to the transactions hereinbefore described. Whether the debt of $40 thus included in the note was previously secured or unsecured, is not disclosed by the record.

The note for $625.70 matured on December 25, 1926, and was not paid, and on January 22, 1927, complainant Sanders instituted an action of replevin before J. B. Bell, a Justice of the Peace of Humphreys county, against Long Daniel and Kittie Daniel, and thereby obtained possession of all the mules described in the chattel mortgage, except one of the black horse-mules which had died before the replevin suit was brought. On the trial of the replevin suit, defendant Long Daniel interposed his minority as a defense and the Justice of the Peace gave judgment in his favor and dismissed the suit of the plaintiff Sanders; but Sanders appealed from the judgment of the Justice of the Peace to the circuit court of Humphreys county and gave bond, and thereby retained possession of the mules pending his appeal.

At the time he instituted the replevin suit, complainant Sanders also sued Long Daniel and Mrs. Kittie Daniel on the note for $625.70 before the same Justice of the Peace and obtained judgment thereon against Mrs. Kittie Daniel, from which judgment she did not appeal;

but as against Long Daniel the suit was dismissed by the Justice of the Peace because of the defense of minority interposed by Long Daniel, and, so far as appears, complainant Sanders did not appeal from this latter judgment.

Before the trial of the replevin suit appealed to the circuit court, complainant Sanders filed the bill in the present case and, pursuant to a fiat of the Chancellor (granted on preliminary application) and the execution of a bond for $1000, the aforesaid replevin suit of complainant Sanders against Long Daniel pending in the circuit court was enjoined, and an attachment was issued and was levied by the sheriff on the five mules then in complainant's possession under the replevin writ.

On March 5, 1927, pursuant to a hearing at Chambers, had on application of complainant and after notice to the defendants, the Chancellor made an order appointing a receiver, which order was as follows:

"E. G. Collier, Clerk and Master at Waverly, is hereby appointed Receiver of the four mules described in the bill in the cause of A. J. Sanders v. Kittie Daniel et al., as the mules sold by complainant to defendants. The Receiver will take charge of said mules at once and after advertising for ten days by hand bills he will sell said mules at the court house door in Waverly, Tenn., to the highest bidder for cash and report his action to the next term of the chancery court at Waverly, Tenn. If necessary a writ of possession will issue to place Receiver in possession of said mules.

"This March 5/1927.

"J. W. Stout,
"Chancellor."

The four mules thus placed in the hands of the receiver were sold by him on Tuesday, March 15, 1926, and were bought by complainant Sanders at the price of $390. The black horse-mule, which was not included in the receivership, was sold by complainant Sanders for $82.50.

The averment of complainant's bill upon which he sought to enjoin the replevin suit brought by him before the Justice of the Peace, and which was then pending on his appeal in the circuit court, was that "said cases are of such character and of such complication that the rights of the parties cannot be equitably adjudicated in a court of law, and that this Honorable Court is the proper place to have these matters adjudicated."

The theory upon which complainant sought to predicate his bill, and the relief which he sought thereby, may be seen from an excerpt from the statements of the bill and the prayer thereof, as follows:

"The complainant alleges that the execution of said chattel mortgage created a lien upon all five of said mules to secure the

payment of said note, but, if said contract or chattel mortgage was void or voidable, then the parties should be placed in statu quo, and such decree rendered, that the complainant be at least decreed the title to the four mules that he sold to the defendant, Long Daniel, and retained title to said four mules in the notes that he canceled at the time he took the note that was sued on before the Justice of the Peace.

Complainant alleges that at the present time the defendant, Mrs. Kittie Daniel, is insolvent and nothing can be made by law against her. That said five mules are now in the possession of the complainant, under bond for his appeal of the Justice of the Peace case to the Circuit Court, and that said mules are being fed by him at considerable expense; and that in this section of country February is the opportune period of the year to sell mules at the highest market price to farmers throughout Humphreys and Perry counties, and that after said month of February mule prices deteriorate; it would therefore, be to the interest of all the parties to this suit that said mules be sold and the proceeds thereof retained in this court until the rights of the parties are equitably adjudicated among them.

"Premises considered, complainant prays, that process and copy issue and be served on the defendants, that said process be made returnable at the earliest rule day, that if necessary a guardian ad litem be appointed for the defendant, Long Daniel who is a minor, and that the oath of the defendant, Kittie Daniel, to her answer is waived. That an injunction issue, or that the appeal from the Justice's court to the Circuit Court herein shown be enjoined; that an attachment issue and be levied on the five mules hereinbefore shown for the enforcement of the lien created by the chattel mortgage executed to the complainant by the defendant, Long Daniel, and if such a lien was not created because of his minority, that a lien be declared to exist against the mules so sold to defendant, Long Daniel, or that title thereto be decreed to complainant, that the Clerk and Master of this court be appointed receiver and ordered by proper order to take charge of said mules and after advertising them for ten days, sell them to the highest bidder for cash and retain the proceeds of sale in this court until all matters among the parties are adjudicated. That upon the hearing, a proper decree be had adjusting and adjudicating all the rights and equities of all the parties to this suit. And complainant prays for all such other, further and general relief, that he may be entitled to in said cause."

The defendant Long Daniel answered the bill on March 29, 1927, and pleaded his minority as a bar to any recovery against him by complainant on any of the matters alleged in complainant's bill. He denied that complainant was in any way embarrassed in his action

at law, and denied that there were such complications between the parties as could not be properly adjudicated at law, and asserted that, as complainant had elected to prosecute his action at law, he (complainant) had no ground or right to come into a court of equity. He asserted that, because of his minority, the execution of the chattel mortgage created no lien on the mules described therein, and that by the cancellation and surrender of the $500 note of March 14, 1925, which purported to retain title to the mules, and the acceptance of the chattel mortgage in lieu thereof, the complainant waived title to any of the mules which may have been retained in the aforesaid note of March 14, 1925.

. Defendant Long Daniel alleged in his answer that the mules sold by the receiver and bought by the complainant were sold for a price much below their value by reason of the time and manner of their sale, and that since complainant's purchase at the receiver's sale he had sold two of the mules for more than he paid for the four mules bought by him at the receiver's sale.

Other matters stated by the parties in their pleadings, respectively, may be mentioned later.

On final hearing, the Chancellor pronounced a decree which was entered of record on November 10, 1927, and which is in words and figures as follows:

"This cause came on to be heard and was heard before the Hon. J. W. Stout, Chancellor, etc., upon the whole record in the cause, and it appeared to the court from the pleadings and proof in the cause, that the complainant was the owner of four mules, two of which he had purchased from Long Daniel, a minor about nineteen years of age, and who was a son of the defendant Kittie Daniel, and for which complainant paid in a check to said Long Daniel the sum of $325, the defendant Long Daniel, on the same day then purchased the four mules in question at the sum of $325 and indorsed said $325 check back to the complainant as a cash payment on said four mules, leaving a balance of $500 with some interest, together with an old balance that defendant Long Daniel owed complainant on the $325 pair of mules that he had formerly sold him, for which balance complainant renewed an old note for mules sold by complainant to defendant Long Daniel, and in which note had retained title to said four mules. And it appeared thereafter, that complainant was trying to collect said note, or get same further secured, when he took up said note retaining title to said four mules and undertook to take a mortgage on said same four mules together with two others, to secure a note given instead of the note in which title was retained on the four mules, and when same was sued on, by complainant, the defendant Long Daniel plead his minority and undertook to take from

complainant all of said mules, being five in number, one having died before suit was brought by complainant, and refusing to pay for the four mules that he had bought from complainant, and which four mules complainant had retained title to when first sold to defendant Long Daniel.

And it further appeared to the court, that a receiver was appointed in the cause and ordered to sell the first four mules sold by complainant to defendant Long Daniel, and retain the proceeds of sale in court until further orders, which order was complied with by the receiver and said four mules brought the sum of $390 at public sale. And it further appearing to the court, that on the same day of the sale of the four mules by the receiver, the said complainant sold the fifth mule that he had in his possession for the sum of $82.59, no order of sale having been made by the court for the sale of said fifth mule.

The court is therefore of opinion and so decrees, that the complainant is entitled to the $390, the proceeds of the sale of the four mules that were sold by the receiver in the cause, the title having been retained in him when first sold to the said Long Daniel, but that the fifth mule sold by complainant for $82.50 belonged to the said Long Daniel, and said sum will be paid to him by the Clerk and Master of this court, and taken out of the $390 received by complainant for the four mules and the balance of the $390 paid to complainant A. J. Sanders.

The complainant will pay all the costs of the cause, for which execution may issue against him and his sureties on his cost bond, the court so orders, adjudges and decrees.

To all of which defendant and cross-complainant Long Daniel, by next friend, Kittie Daniel, excepts, and prays an appeal to the Court of Appeals at Nashville, which is granted and for cause shown he is allowed thirty days from adjournment of this court, within which time to perfect his appeal by executing bond therefor or taking oath prescribed for poor persons.''

Upon the foregoing decree of the chancery court, the appellant has assigned errors as follows:

''First: The court erred in finding that defendant in error, Sanders, was the owner of four mules, two of which he purchased from plaintiff in error for $325, and that plaintiff in error, Long Daniel, on the same day, purchased the four mules in question at the sum of $825, paying therefor by indorsing Sander's check for $325, and giving his note for $500, with title to four mules as security.

''Second: The court erred in finding that the note executed had merged therein the amount of an old note which Daniel owed Sanders, and which retained title to the two mules alleged to have been sold by Daniel to Sanders 'on the same day' for $325.

"Third: The court erred in finding that complainant below, Sanders, had retained title to the four mules when first sold to defendant Long Daniel.

"Fourth: The court erred in decreeing to the appellant, cross-defendant below, only $82.50. The court should have decreed to the cross-defendant below, Long Daniel, this $82.50, and also the value of the bay horse-mule, and the blue mare-mule, which were subjects of the $325 check transaction.

"Fifth: The court erred in failing to decree to the cross-complainant below damages for the use, or rental value, of the $82.50 mule, and also the bay horse-mule and the blue mare-mule for the time he was deprived of their use and possession, by the processes of the law court, and this court, sued out at the instance of defendant in error."

We are of the opinion that the appellant's first, second, third and fourth assignments of error must be, and they are, sustained. Complainant did not, in our opinion, acquire title to the bay horse-mule and blue mare-mule by the transaction had on March 14, 1925, and, therefore, he had no title to these two mules which he could retain for the security of the $500 note then executed, or for any purpose.

Complainant's retention of title to the two bay mare-mules, in the $500 note of March 14, 1925, was valid, and the title to these two mules remained in complainant, as security for the purchase money debt, until he canceled and surrendered said $500 note and accepted the note of May 10, 1926, secured by a chattel mortgage on the same mules, with others. The acceptance by complainant of the mortgage containing recitals that Long Daniel, the mortgagor, was the owner of the mules and that they were unincumbered, was inconsistent with the theory that complainant thereafter had title to any of the mules in question by virtue of the retention of title in the note of March 14, 1925.

The Chancellor, sub silentio, held that complainant was not entitled to a foreclosure of the chattel mortgage, and in this he was manifestly correct. For in addition to the fact that defendant Long Daniel pleaded his minority as a defense in this case to any and all relief sought by the bill, it appears that the Justice of the Peace adjudged that Long Daniel was not liable to complainant on the note which the chattel mortgage purported to secure, and from that judgment the complainant did not appeal. It having been thus adjudicated that Long Daniel is not obligated on the debt, which was the principal thing, the mortgage, which was merely an incident to the debt, was no longer enforceable.

However, we do not think that defendant Long Daniel should be permitted, in a court of equity, to repudiate his contracts with complainant, on the ground that he was a minor at the time they were

made, without restoring to complainant the property which he (Long Daniel) received from complainant by virtue of said contracts, viz: the two bay mare-mules. But, as we have heretofore stated, the purported retention of title to the bay horse-mule and blue mare-mule in the $500 note of May 14, 1925, was nugatory and ineffective, and we think the learned Chancellor erred in decreeing that complainant was entitled to the proceeds of the sale of the bay horse-mule and blue mare-mule sold by the receiver.

In this connection, it may be said that we find no proof to sustain the finding of the chancery court that (at the time of the transaction of March 14, 1925) defendant Long Daniel owed complainant "an old balance on the $325 pair of mules," and we do not concur in this finding of the Chancellor. The proof, we think, affirmatively shows the contrary, that is, that at the time defendant Long Daniel bought the two bay mare-mules from complainant on March 14, 1925, he (Long Daniel) owned the bay horse-mule and the blue mare-mule (described in the decree as "the $325 pair of mules"), that he had paid for them and his title thereto was unincumbered.

The appellant's assignments of error do not question that part of the Chancellor's decree awarding to complainant Sanders the proceeds of the two bay mare-mules, and we do not think that, in this respect, the decree could be successfully assailed. Neither is the allowance of only $82.50 to defendant Long Daniel as the value of the black horse-mule questioned by appellant's assignments of error.

By the injunction, attachment and decrees in this case, defendant Long Daniel has, in our opinion, been unlawfully deprived of two mules, viz: the bay horse-mule and blue mare-mule, sold by the receiver, and he was also entitled to the value of the black horse-mule sold by complainant, which latter sum was awarded to him by the Chancellor.

Complainant bid in the four mules at the receiver's sale for $390, which he admits in his testimony was less than their real value. It appears, without dispute, that the time was unpropitious for such a sale of mules, because of "high waters" which prevented farmers from reaching Waverly at the time of the sale, and that the mules were sold "at the end of the halter," that is, without warranty as to soundness and qualities, and complainant was the only bidder for the bay horse-mule and blue mare-mule. He states in his testimony that he did not bid more because he had no one to run the mules up on him. The four mules thus bid in by complainant for $390 were subsequently sold by him for $515. He sold the bay horse-mule and blue mare-mule for $220, and he is, therefore, not in a position to say that they were worth less than that sum. In fact, he does not make such claim.

But for the fact that there is a fund in court and the rights and equities of the parties may be adjusted in the distribution of that fund, the defendant Long Daniel would be entitled to a judgment on the injunction and attachment bond given by complainant, for the value of the three mules of Long Daniel wrongfully appropriated by complainant.

Insofar as the Chancellor's decree directs that the sum of $82.50, representing the value of the black horse-mule sold by complainant, be paid to defendant Long Daniel out of the fund in court, and insofar as it adjudges costs against complainant, the decree of the chancery court is affirmed; but insofar as the decree directs that the remainder of the fund of $390 (after deducting the aforesaid $82.50.) be paid to complainant, the decree will be modified and, in addition to the aforesaid sum of $82.50, the further sum of $220, as the value of the bay horse-mule and blue mare-mule, will be paid to defendant Long Daniel, making the sum of $302.50 which will be paid to defendant Long Daniel by the Clerk and Master out of said fund of $390, and the remainder of said fund, after the payment of costs, will be paid over to complainant. As the aforesaid fund of $390 is in the registry of the chancery court, the cause will be remanded to that court for the distribution of the fund and the execution of the decree of this court under the orders and decrees of the chancery court.

The costs of the appeal will be adjudged against the complainant A. J. Sanders.

Crownover and Dewitt, JJ., concur.